May it please the court. My name is Cynthia Everson and I represent Justin Kelly, the appellant in this case before your honors. I'm gonna try to simplify it as best I can with a 49 page complaint but there's just a couple of points that I would like to make before your honors. The right to a trial of a jury by our peers is one of the most fundamental aspects of our judicial framework. In this particular case, Mr. Kelly has not received that. His cases were disposed of at the summary judgment stage based on, according to the court's orders, qualified immunity and probable cause. We are asking reversal of that order on just a few of the claims for very specific reasons. Those claims that are on appeal before this court are Mr. Kelly's claims, due process claims, equal protection claims, and his second amendment claims that are intertwined as well as his various claims for state tort violations, excluding the malicious prosecution and false arrest claims that he made, which are related to a finding of probable cause. The other state law claims have absolutely, it's not a defense at all to any of the other state law claims that the district court and contend that for that reason alone that the district court's grant of summary judgment on these those state law claims should be reversed. Let me make it simpler than that. Did the district or did the lower court actually address state law claims? Other than to dismiss them, no. So if you're right that they should be remanded? That is our position. And also with respect to the due process and equal protection claims. Well, if there are claims that remain unresolved, do you have a final order from which you can take an appeal? Sorry. Well, your honor, in part, yes, because unlike in the prior order where the court didn't address the prior appeal, when the district court didn't address the case, the court does address the equal protection claims. He does recognize them in his order. His order states that the plaintiff's requests for summary judgment on his equal protection and due process claims are denied. I will agree with your honor that the appellant did not make a request for summary judgment on a due process or equal protection claim. So with respect to that, the court does recognize them. It does deny them. So it does address them, at least with respect to rendering judgment on them. But just like in the prior history of this case, the district court did not substantively address those due process claims. At no point in the 2015 order or the 2017 order does the district court actually substantively go into detail and provide an analysis as to why the district court dismissed those claims. Specifically, the first due process claim is a Brady-like claim. It's not addressed. And then also the due process claim with respect to the continued seizure and failure to return the firearms is not addressed. And I can provide, if the court needs it, I can provide the And that is the first one. I thought what Judge Floyd asked you about, maybe I didn't hear this right, he asked you about were there state law claims that the district court has never addressed. The state law claims that are the basis of the appeal, it would be our contention they haven't addressed it. I do believe that the district court addressed the false arrest claim in talking about the I'm just asking because we sent this case back once because there are claims that were not addressed. If there are other claims that the court has not addressed, do we have a final order for purposes of appeal? For purposes of appellant's appeal, we would contend there is a final order for us to be here to date. There was a judgment, there was a mandate issued, there was a timely notice of appeals filed. I think he means do we have appellate jurisdiction over those claims. Right, right. We would contend that the jurisdictional issue certainly could be raised by this court as it was previously. The one they are addressed, they're mentioned, so not substantively. So with respect to having a right of appeal, we would contend that they are at least mentioned unlike in the previous case. He gave, I mean they were given short shrift. Correct. Would the same be said as to the Second Amendment claim? Well no, the What exactly is the Second Amendment claim? I was a bit, I was trying to pin it down, trying unsuccessfully to pin it down. The Second Amendment claim is pled. It is, there is evidence in the record about it. Specifically in this particular case, not only did the government actors deprive Mr. Kelly of specific firearms, which we address under due process. Which government actors? The Charlotte-McElmure Police Department, specifically, well let me backtrack. Before the Police Department, the Private Protective Services Investigator, Sarah Connor, deprived him. Didn't they do that pursuant to state or county law, is my question. The reason I'm asking is because it wasn't clear to me whether you were challenging the state law that recognized Mr. Kelly's misdemeanor conviction, prior misdemeanor conviction, for purposes of depriving him of the right to possess a firearm. You see what I'm saying? I mean I was trying to, I was trying to thread, I was trying to weave those facts into, to understand what your Second Amendment claim was and against whom. Okay, so with respect to Miss Connor, the Second Amendment claim would be that she didn't have a right to dispossess him of a firearm, period. There's no state law that would have allowed her to dispossess him of a firearm, which it is undisputed that she did. She personally? She personally did. That is undisputed. She was not acting under the direction of the other investigators that she accompanied? Mr. Kelly does not dispute that the police officers had a lawful right to initially dispossess him of a firearm. Okay, so she, right, so that was sort of my point. And so, I don't, and I don't want to take up a lot of time on this, but I really was a little unclear against whom your Second Amendment claim was directed. And I'm still not seeing how it's directed against Miss Connor, given the fact that he, that it appeared that Kelly did unlawfully possess the firearm on the night of the original altercation. So, your argument, as I understood it, and please correct me if I'm wrong, is that the firearm was not returned to him. Sorry. I'm not trying to interrupt you. I wasn't trying to interrupt you either, so I'll stop and you talk. So, with respect to the Second Amendment right, as far as his right to bear arms in perpetuity, that claim is against the city of Charlotte, which is the real party interest for the actions of the Charlotte Metropolitan Police Department. They are the ones who returned the firearms to his father. They are the ones who told his father he cannot give them to him. Even the affidavit by the returning officer acknowledges that, that we told his father he cannot possess them. Okay, and that was not pursuant to state law? I thought, and I obviously misapprehended this, that he was told that because of his conviction, that he was not allowed under state law to possess firearms. Did I misunderstand that? There is no state law whereby a misdemeanor conviction makes you prohibited from possessing firearms. So, that's your Second Amendment argument? Correct. The premise was, is that the Charlotte Metropolitan Police Department still considered his assault conviction to be a misdemeanor crime of domestic violence under federal law. But they have, what act has been taken to deprive him of a firearm outside of this security guard statute and those actions? I mean, have they taken any action that he can't go to a gun store and if he passes the background check, I don't possess a firearm? With respect to that, no. They have not done any of that. However, they... Doesn't something like that have to happen before he has a cause of action? It's our position, no, Your Honor. In this particular situation, this is a person who was arrested three times by Charlotte Metropolitan Police officers, who thereafter was given a directive indirectly through his father that he can't possess firearms. Was he arrested for anything other than this private security guard stuff? I'm not sure I'm understanding the question, Your Honor. The edict from CMPD Detective Shipman to his father saying he cannot possess firearms. Again, this is a person who was arrested three times and who was fearful of being arrested again. Certainly, he was not just arrested for working as a security guard. I mean, the third arrest was for being a prohibited person possessing a firearm. So, your bottom line point is that your allegation that a police officer told the appellant's father he couldn't have a firearm, that is sufficient to make a constitutional claim? Against the city. Correct. Because it's our position, and we have provided in the record the policies of the Charlotte Metropolitan Police Department. It's our position that that is a policy of the city of Charlotte with respect to the actions of its officers. So, the officer made that edict pursuant to a policy of the Charlotte Metropolitan Police Department. And again, given the fact that he was arrested three times, he certainly had a reasonable expectation of a future arrest based on that. He was arrested in connection with the possession of the firearm as a security officer at Club Calypso. Correct. There's no indication that he was arrested in any other context, is there? Well, the federal context was derived from that, but it was a possession offense. It wasn't just a complaint. It was deferred to federal. Correct. And this is also a gentleman who had previously had a trial for this offense, previously been found not guilty, previously been ordered to return his firearm, and then four months later went through the same thing again. So, certainly from his perspective, there's some uncertainty about future arrest, and particularly from a court of no record, certainly it's reasonable for him to desire something recorded with respect to his future interactions with law enforcement. And just, I only have a couple of more minutes, so I did want to address one of the more far-reaching arguments, which is the constitutional challenge to the North Carolina Private Protective Services Act. It has never been addressed, and I mean, the district court orders both times, they rely on Shipman. Shipman addressed language that was actually in the act, and also Shipman addressed the Private Protective Services Act as an occupational licensing statute. There has never been a court that has looked at the constitutionality of the Private Protective Services Act as a criminal statute. Certainly, it cannot be without question that this is a criminal statute, in part because Mr. Kelly was arrested twice for violating its provisions. The void for vagueness doctrine with respect to criminal statutes is created and exists for very important reasons, largely so that the average person, a person of ordinary intelligence, could determine what conduct is unlawful so they can conform their conduct to the law. Yes, and also to discourage arbitrary enforcement of that law. Here we have a situation where the record is replete with evidence of the vagueness of certain provisions of this statute, specifically those that deal with security guards and specifically those that deal with armed security guards. In fact, the law is so vague that the board that administers some of its provisions has created a license itself to kind of absolve some of those ambiguities, which the Private Protective Services Board does not have the authority to do. They mention that in the brief, this proprietary license that they have created. There is nothing in the Private Protective Services Act that gives them the authority to do that. However, they have... So the North Carolina State Court cases that have considered this statutory scheme, what were the claims in those cases? In the Shipman case, because the Shipman case is the one that deals with its constitutionality. And in that particular case, someone was challenging, I believe a detective, a private investigator was challenging the inclusion statutes as opposed to the exclusion statutes as to whether or not it was constitutional to require licenses of some and then make exceptions for others. In this particular case, we have an issue with respect to undefined terms completely, not terms that are listed and that are included, but terms that are excluded. The Private Protective Services Act on its face says that it is designed to promote the integrity of private protective services professions. The Private Protective Services Board, and they argue in their brief, has expanded that to regulate people who engage in private protective services duties or activities. That is where the ambiguity really comes to the foreground, because there is nowhere in the Private Protective Services Act where those terms are defined. And when you are examining a law as a criminal statute, they must be defined. We cannot allow an unelected administrative agency that is unanswerable to the people to create definitions of which the people have no notice. They don't know. If all of those functions that are in some of the definitions in 74C2 would require people to have licenses, then essentially everyone in the state of North Carolina in some fashion would be required to obtain a license. Am I over? Yes. I'm sorry. No, please finish your statement. Sure. I just don't want to preclude questions, but please go ahead and finish your statement. For those reasons, I would ask that this Honorable Court find those provisions unconstitutionally vague as criminal laws. Thank you. Thank you. You have some time on rebuttal. I appreciate it. Thank you, Your Honor. Mr. Gray. And please, the Court, I am Jeff Gray. I'm the legal counsel to the Private Protective Services Board but have lived this Act, 35 of its 45 years of existence, so very familiar with it and have served as legal counsel to the Board for the last six or seven years. First, as I say, it's 45 years and there's been a single challenge, Judge Agee, and that was shipment and it was equal protection from a private investigator, and that's it. No one else has seemed to find it void for vagueness or found any vagarity in it at all. But first, let me address the first part of counsel's argument, but only briefly. We understood we were back here on two particular allegations in the complaint that Judge Kater did not address in his order. In our view, it was addressed because there was no void for vagueness argument at that time. The allegation was that it was indeed void for vagueness. The constitutional standard wasn't raised except in the brief in the last hearing before this Court. We presume since it wasn't raised, you all sent it back. And so that's what we thought we were here talking particularly about today is Allegation 11 and 12. But you all appear to have some questions on the other claims, particularly the state claims. Just briefly, we would argue that because it was a lawful arrest and there is an opinion in the Lautenberg hearing that was held, the separate federal hearing that counsel has alluded to about the firearms and the ATF, and whether he could possess them or not, Judge Whitney entered an order that it was a lawful arrest. So everything dissolves after that, and that is a question that Judge Floyd had at the first argument he asked, and that was the only question we got about state claims at the first oral argument, and Judge Floyd particularly asked about that. It was a search incident to arrest. Therefore, they could seize the firearm. They could look at his ID. They could take the firearms from his wingspan, et cetera, and all the trespassed chattels and all of those other allegations die with that. The most important thing to me as counsel to this Board is the void for vagueness argument, and I believe I see and I understand the confusion that the plaintiff had in this matter, and it has nothing to do with 74C. It has to do with 14-269.3, the statute that counsel has cited in the brief, did not bring up in the argument, cited in the brief, and plaintiff has struggled with that, but others have struggled with that. Let me interrupt you just a minute. Yes, sir. I don't want to leave out any question about the state law. I'm looking at page 959 of the appendix in the May 2015 order, and the district court does list a whole string of state law claims and says they are dismissed for the same reasons that it had asserted earlier with respect to other claims. Is that, in your view, final and reviewable for our appellate purposes? In my opinion, yes, Your Honor. It was the first time, and it is this time. He incorporates by reference his first order. The court found no issues with that the first time around and specifically sent back instructions to Judge Cater that he was to address allegations 11 and 12 in the complaint. That was the specific instructions, for lack of any other word, back to the district court. And Judge Cater specifically emphasized those and incorporated his previous order by reference since there was no instruction from this court to address the state claims or any other claims. I think in defense of Judge Cater, he did what he thought the court had instructed him to do in the order that remanded him back to make specific findings on just 11 and 12. So in his defense, I think he did that, and for the sake of, I guess, brevity or whatever, just incorporated by reference his original order, which I think any reasonable reading of this court's remand would be that you had no problems with anything else in his original order because you only remanded to make specific findings on allegations in 11 and 12. I might agree with you that the 1983 claims should be affirmed, except for the Second Amendment claim. Can you address that? Absolutely, Your Honor. First of all, the Second Amendment has never been expanded to this point. And as you are well aware, some of the most informative cases on that issue post-Heller have come from this court, Mascindero being probably the best, and Judge Niemeyer's opinion there of being kind of— Well, before, why don't you tell us what you understand the Second Amendment claim to be? I wish I could tell you exactly, Judge Agee, because I don't. What I think he is saying, what I think the plaintiff is saying, is that he was not carrying his firearm as an armed security guard, that he was carrying his firearm as a private citizen, and that therefore that the United States Supreme Court opinion in Heller should be expanded from a home, a residence, and defense of home to the defense of a parking lot for pay, which if you look at Judge Wilkinson's dissent in Mascindero, he talks about the terra incognito of going too far afield from Heller. Well, that's going pretty far afield. I'm sorry? No, I just think his argument is that he wasn't subject to the act because he wasn't carrying it as an armed security guard. He was carrying it to defend himself, and that is in the brief. That is in the plaintiff's brief. I think that is the Second Amendment claim, and that is so far afield of any opinion that we've had in the nation so far. Of course, the Supreme Court is now looking at leaving the home, possibly looking at it, with accepting cert in the New York Rifle and Pistol Association case that they've accepted cert. I think opposing counsel's argument to include some communication from the police department to the appellant's father that he was not eligible to carry a gun. That's what I understood from the argument today, that that was part of the Second Amendment. You have to look. First, they came and retrieved the weapons when they brought the Lautenberg action in federal court. They took them from CMPD, they being ATFE. They took custody of the weapons. He was prosecuted there. Judge Whitney entered an order, said it was a lawful arrest, but it wasn't. The underlying offense didn't meet Lautenberg because being a non-court of record, they didn't know whether it was domestic or not. So that went to the feds. If there is a violation there, none of those parties are here. The ATF's not here, the federal government, whoever that may be is not here in that decision. And it had already been determined by our court of appeals that this plaintiff could be denied a concealed carry permit, and he had challenged the sheriff of Camarus County, and there is a reference to that court of appeals case in our brief. And so the sheriff had already denied him for a concealed carry permit, which I assume he would deny him for a purchase permit too, but there is a North Carolina court of appeals opinion with this exact same plaintiff where he was denied that for the exact same assault on a female offense. So if somebody is denying him a weapon, a firearm, possession of a firearm, it is none of us. We're just saying he can't have the weapon as an armed security guard for pay. That's what we're saying. And that's the explanation for not returning it to him at all? That I don't know. That wasn't us. You had a CMPD officer that was assigned to ATF that was involved, but that was about the only connection to CMPD.  It wasn't the city of Charlotte. CMPD had an officer assigned to ATF who was their liaison, so his name is on emails, et cetera, but none of the parties here have denied him a weapon, a firearm. Let me make that distinction. Which entity actually returned the firearms to the appellant's father? ATF and their liaison, and their CMPD liaison. We have the private protected services board has not denied him the right to possess a firearm. We've only said that he can't possess a firearm while performing armed security guard duties for pay. He can do it for free, but just not for pay. And that is our only involvement in that issue. But I think the broader Second Amendment issue, the true Second Amendment issue, is whether he can possess it in defense of himself. If he does that, and that's why we are so concerned about this case, it turns our all on its ears. Every security guard out there at every shopping mall and school and wherever will say, well, I'm not carrying this as an armed security guard. I'm carrying this to defend myself. And there is no reading of the Second Amendment, at least so far, that says a state cannot reasonably regulate it because we're asking for training, and we are asking for a criminal background check, et cetera. So the broader Second Amendment question is so far afield of anything this court or the United States Supreme Court has held so far that it should not be an issue. We are limited to claims presented in the Statement of Issues in the appellant's brief. I'm not seeing... The jury could find that Connor, in the city of Charlotte, violated his clearly established right to bear arms is sort of the sum total of that argument. To do that, the jury would have to find that the city deprived him of it anyhow. It was taken into their custody in a search incident to arrest. His appeal was pending when he was indicted federally. Then the ATF came in and took it from the evidence locker of CMPD and put it wherever ATF puts things, I presume in their own evidence locker. Then when he was indicted federally, the state, the district attorney, dismissed it in superior court on appeal, the district court action. So we were out of the game after that. We being the state of North Carolina and the city itself were out of the game. Well, did a district judge make a finding on the Second Amendment? And if so, where? No, Your Honor. There's been no finding on the Second Amendment at all. And we can only guess what the exact Second Amendment argument, because this has flowed like a lava lamp. The briefs, the arguments have flowed throughout this like a lava lamp and sometimes contradicting themselves on the evidence as to whether why he was carrying a gun, whether he had permission. The owner said that he wasn't supposed to be carrying a firearm, and so he was carrying it anyhow, so there's questions there. He wasn't on the premises of the permanent establishment, so 14-269 shouldn't apply anyhow. And there's just so many issues here that we are not absolutely certain what claim it is, but we have tried to answer them as best we could without going too far afield. Thank you, Shalonda. Thank you. Mr. McDonald? Yes, ma'am. Good morning, Your Honors. My name is Robert McDonald. I am here representing Officer Curl and also on the city's response to this action. I'd like to direct the court and address this issue of what the city's role was in this action. The city has never, never indicated to Mr. Kelly that he could not own a weapon. They've never done that. When Mr. Kelly was deposed, I asked him if, and this is on page 1004 of the joint appendix, whether or not he had received notice from the city that you would be prosecuted for possessing a firearm, and his response was no. I think the most important thing is I would direct you to portions of the 1303 through 1304 and 1051 through 1060. 1303 and 1304 is a document which purports to be an ATF log, a management log of the transactions that occurred with the ATF case. It was prepared by Special Agent Griswold and Officer Shipman, who was assigned to the ATF task force. He was a sworn Charlotte-Meckler Police Department, but he was also a sworn federal officer, which I think is important in this case. But when you go through the management log, there are on 328.12, that's when the federal agents picked up the weapons and, as their note is, picked up from CMPD property section and taken into ATF custody. The case went on, and Judge Whitney found probable cause and denied the motion to suppress. And after that, the issues came up about whether or not this was a domestic violence crime. Judge Whitney dismissed the charges based on the fact that Cabarrus County had destroyed their original records, and the only thing that was available was a screenshot of the transaction of the conviction, but it did not have any affidavits or anything like that that would give the basis for the federal charges. The second charge was dismissed by the U.S. attorney, but this is where the transaction gets very murky. To the extent that the plaintiff's lawyer on 10-20-2013 sent an email to Officer Shipman and Griswold, Griswold being the ATF agent, following up on retrieving the property. On 2-21-2013, Ms. Griswold sends an email to Ms. Everson and Mr. Shipman indicating that once they receive authorization and the state no longer needs the evidence, we'll get it back to you. It moves on along, and then Ms. Everson sends an email to Mr. Curl on 3-28-2013 asking him about getting the property released, and here she is talking about a knife, and he writes back, you need the address and phone number. She's not seeking to get a weapon from him, and that was the officer who had impounded it. Then on 5-4-5-2013 at 10-42, Ms. Griswold emails Ms. Everson, and this is from her notes. Since state still considers Mr. Kelly prohibited, can you provide me with the names, addresses, and phone numbers of alternative parties to release the firearms? So it was the federal agent said the state still considers. Ms. Everson at 11-01 the same day writes back, Kelly agrees for the firearms to be released to his father, gives an address and a phone number. The same day Officer Griswold sends an email, we'll get it processed. Mr. McDonald, I appreciate your recitation. You've been out of time for a little while. I'm sorry, Your Honor. My point is simply the city had no dog in this fight. They did not tell him that he could not possess a weapon. It's that straightforward. It's right in the record, and I'm not sure how to put it any other way, but the record is absolutely clear that the city did not tell him he couldn't possess a weapon. But either of the district court's orders have a specific ruling to that effect. None of the district, are you talking about state district court? U.S. district court. Right. As I understand it, that's the claim in count 12 of the appellants. They say he can possess a weapon. Nobody says he can't. No, no. Question. I'm sorry. The complaint arguably brings the second amendment claim. So my question is, is there any place in the district court's orders where it specifically rules on that count of the indictment? No, sir. All right. Good morning, Your Honors. I may please the court. I'm Ryan Park from the North Carolina Department of Justice, and I represent Appellee Sarah Connor, who at the time of the event in question was an investigator who was employed by the Department of Justice, whose principal job responsibility included ensuring that armed security guards were licensed under the Act and complied with the Act's other requirements, including training and insurance. So there are nearly 20 claims at issue in this appeal, and by my count four of the federal claims and the state claims apply to Ms. Connor. So I'm happy to answer any questions generally, but on this court's jurisdiction, which has been discussed already, I would direct the court to, as it's already been looking at, to appendix page 1450, which is the second district court order here. And it squarely says that there is no Second Amendment right to possess a firearm in the circumstances that led to his arrest, and that is consistent with the cases that Appellant relies on, which hold the Walters cases, the main case from the Eighth Circuit, that there's no Second Amendment right to own a specific firearm. There may be a due process issue if you have deprived an individual of their property generally, but the Second Amendment is not implicated there. Now, in the presentation here and in the briefs, there is some confusion as to what the nature of the Second Amendment claim really is. Is it about the possession of the specific firearm or is it about a general declaration of a right to possess a firearm generally? And so in her brief, and here Mr. Kelly's counsel has contended that the Second Amendment claim is not the substance of the Second Amendment claim, but there was a specific ruling on remand on count 12. On the state court claims, as I believe Judge Agee mentioned, we believe there was a final ruling on those claims because the district court said, for these reasons, referencing the past lack of probable cause, the previous discussion of the probable cause and how because there's probable cause, all of the state court claims fall away. And that is consistent with the state's position as well. So I'm happy to answer other questions. There are, we haven't, I guess if I could just speak briefly in my remaining time on the Brady issue. So Mr. Kelly has contended that we, Ms. Connor in particular, failed to disclose exculpatory evidence, but what she has identified is legal research. If you look at Joint Appendix 1111 to 115, there are, it's a series of emails where board staff is discussing whether the act applies to Mr. Kelly, and that's opinion work product that is not covered by Brady. And there's also a mention of legislative history, the act's legislative history, and that is also not covered by Brady because it's material that Mr. Kelly's counsel and Mr. Kelly himself could have learned through reasonable investigation, and he in fact did so, as the record reflects, through his own investigation to find that information. So the court has no further questions. Thank you. Thank you. Ms. Anderson. Ms. Anderson. Just briefly in response to some of the things that were brought up, the complaint does allege a void for vagueness challenge in paragraphs 313 to 314 with respect to challenging the specific provisions of 74C in the criminal context. Certainly it could have been more artfully worded, as I have conceded, but the components of a void for vagueness challenge are in both of those paragraphs. With respect to the mentioning of 14-269.3, it is not an exemption. It is a statute that also deals with the topic of security guards. It also deals with the topic of armed security guards. And so it's appellant's position that that statute, since it deals with the same subject matter as Chapter 74C in its entirety, should be read in party materia with the provisions of 74C3. It mentions that. This section shall not apply to any of the following. It prohibits people from having weapons and establishments that serve alcohol, subject to certain exceptions. The reason that it's been discussed from appellant's perspective with respect to this particular, this Chapter 74C3 is because it mentions security guards being registered or hired. Why is that important? With respect to the Chapter 74C's applicability to Mr. Kelly and its own licensing requirements and authority, it says anyone who desires to carry in a private protective services profession may apply for a license. Then it further provides in 74C13 that any licensee shall register an employee within 30 days and it proceeds to talk about what type of employees. There is no provision in the entire Chapter 74C whereby a person who is not seeking to work in or working in a professional private protective services profession can obtain a license. So certainly that would add to our vagueness argument in that Mr. Kelly's compliance, since he did not work for a, he was not himself engaged in a private protective services profession and did not work for an entity that was, it was impossible for him to comply with the licensing requirements. With respect to the mentioning of the, who had possession of the weapons in the Second Amendment challenge, the Second Amendment claim has never been between Mr. Kelly and the Board. The Second Amendment claim was always between Mr. Kelly and Ms. Conner since she initially dispossessed him of his weapon and also the City of Charlotte since the City of Charlotte refused to return him his weapons. The property records in the record, including the ATF's own property notes, indicate that at all times the Charlotte-McIntyre Police Department had possession of Mr. Kelly's firearms. The ATF's property sheet on 1047 of the Joint Appendix very clearly says that the firearms were maintained at all times by the Charlotte-Mecklenburg Police Department. The affidavit that was submitted by Mr. Kelly's father, which creates at least a genuine issue of material fact, says that at the time the firearms were returned, the ATF told him that the ATF did not have any issues with him possessing firearms, but that the City of Charlotte or the Charlotte-Mecklenburg Police Department had the issue. And there Mr. Kelly's father went into a bit of explanation about what was told to him at that time, which he did provide in an affidavit, which is part of the record, and we would contend at least creates a genuine issue of material fact as to whether or not the City of Charlotte interfered with his future possession of firearms by making that edict to his father. That's consistent with the ATF notes that were mentioned just a few minutes ago where they say that task force officer, name is redacted, explained, name is redacted, that Kelly is still recognized as a prohibited person by the State of North Carolina and that he cannot possess to include shoot any firearms. That statement was made by an employee of the Charlotte-Mecklenburg Police Department, the City of Charlotte. The count with respect to Mr. Kelly's count 12 as to his right to possess firearms, it specifies what he's seeking as to his right to possess firearms. At no point in that claim, which is page 46 of the joint appendix, does he say he wants to possess a firearm as a security guard. He is saying they refused to return his weapons, they told him the State considered him prohibited, there's no State law that makes him prohibited from possessing a firearm. North Carolina is an open carry state. His inability under State law to obtain a concealed permit has no bearing on his ability to openly carry a weapon. And that was the request that we made and that was what the district court failed to address. Thank you. I think my time is up. Thank you. We will come down and take a brief recess.
judges: Allyson K. Duncan, G. Steven Agee, Henry F. Floyd